```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IGDALY ORTA,
                    Plaintiff,

                                                        DECISION AND ORDER
v.
                                                        17-CV-00676

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,
                    Defendant.
_____
```

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of a Magistrate Judge [12].[1] Before the Court are the parties' cross-motions for judgment on the pleadings [15, 20]. Having reviewed the parties' submissions [15, 20, 21], I order that this case be remanded to the Acting Commissioner for further proceedings.

## BACKGROUND

Plaintiff applied for DIB benefits on October 23, 2013 (R. 181),[2] alleging a disability onset date of April 16, 2013 due to injuries to his rotator cuff, herniated discs and pain in his spine and shoulder (R. 201). After plaintiff's claim for benefits was initially denied, an administrative hearing was held on January 16, 2016 before Administrative Law Judge ("ALJ") Lynette Gohr (R. 37). ALJ Gohr issued a decision denying benefits on February 19, 2016 (R. 21-

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     References denoted as "R." are to the administrative record [5]. Unless otherwise indicated, page references are to numbers located on the bottom of the document pages.

32). The Appeals Council denied plaintiff's request for review, and plaintiff thereafter commenced this action.

## DISCUSSION

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

### B. Did the ALJ Properly Determine Plaintiff's RFC?

Plaintiff was involved in a motor vehicle accident on April 16, 2013. He complained of neck and back pain (R. 260). An MRI dated May 3, 2013 revealed a mild buldge at L4-5 indenting the ventral thecal sac and slightly effacing both traversing L5 nerve roots, as well as a mild bulge at L5-S1 with mild associated left postoerolateral ridging and bulge encroaching on the left neural foreman, slightly effacing the undersurface of the exiting L5 nerve root (R. 270-271). An MRI of plaintiff's cervical spine on May 28, 2013 revealed mild or minimal C3-4 and C4-5 disc bulges consistent with vertebral subluxation complex (R. 296).

On May 21, 2013, plaintiff was examined by Dr. A. Marc Tetro, an orthopedic surgeon who specializes in shoulder injuries, for complaints of pain in his shoulder and cervical areas (R. 406). Dr. Tetro diagnosed plaintiff with bilateral shoulder impingement syndrome, bilateral shoulder glenoid tear, bilateral shoulder posttraumatic joint arthrosis, and cervical origin pain (R. 288). He opined that plaintiff was "unable to work and would be considered disabled with regards to[his] usual occupation" (R. 410).

Dr. Cameron Huckell, an orthopedic surgeon, examined plaintiff with respect to his back injury on June 27, 2013 (R. 296). He determined that plaintiff suffered "significant injuries to [his] spine as a result of the motor vehicle accident". Id. Dr. Huckell stated that although he would not rule out surgery in the future, he opted to continue with conservative care consisting of regular chiropractic manipulations. Id. Dr. Huckell stated that plaintiff was "temporarily disabled" Id.

On July 11, 2013, Dr. Tetro again found plaintiff to be "unable to work" and "disabled with regards to [his] usual occupation" (R. 379). After physical therapy (R. 288, 315-324, 355-360, 369-375, 381-385, 394-401) and injections (R. 378, 409-410) did not produce satisfactory results, plaintiff underwent surgery on his left shoulder on September 30, 2013 (R. 311). On October 11, 2013, Dr. Tetro repeated his opinion that plaintiff was "unable to work" and "disabled with regards to [his] usual occupation" (R. 328).

On April 14, 2014, plaintiff underwent surgery on his right shoulder (R. 413-416). Following this surgery, on April 25, 2014, Dr. Tetro opined that plaintiff was considered temporarily totally disabled (R. 412). Dr. Tetro again found plaintiff to be temporarily totally disabled on July 18, 2014 (R. 423).

On October 7, 2014, Dr. Huckell, who continued to treat plaintiff with respect to his back injury, determined that plaintiff was "temporarily disabled at this time as a result of the

motor vehicle accident" (R. 459). On November 5, 2014, Dr. Huckell opined that plaintiff was "considered to have a permanent partial disability at this time as a result of the motor vehicle accident" (R. 460). On February 24, 2015, Dr. Huckell determined that plaintiff "developed a traumatic complete annular tear at L5-S1 likely as a result[of] the above car accident" requiring surgery (R. 437). He repeated that plaintiff had a permanent partial disability (R. 438).

On March 11, 2015, plaintiff again underwent surgery. On this occasion, Dr. Huckell performed an anterior L5-S1 discectomy and fusion to address plaintiff's back injury (R. 453). Post surgery, plaintiff continued to complain of neck pain radiating into her shoulders, with associated numbness and parasthesias to his hands. Id. Upon examination on June 17, 2015, Dr. Huckell stated that plaintiff had a "permanent partial disability" as a result of the motor vehicle accident, but that he was "totally disabled" for a minimum of six months from the date of the March 11, 2015 surgery (R. 445).

On September 15, 2015, Dr. Huckell again noted plaintiff's continued pain and his need to use a cane for walking (R. 485). He observed that the "rubber tip on the cane is very well-worn indicating frequent usage". Id. Plaintiff's lumbar range of motion was significantly diminished (R. 485-486). On December 15, 2015, Dr. Huckell opined that plaintiff "has been totally disabled since his car accident" and that he remained "totally disabled for work" for at least an additional three months (R. 488).

Based upon this record, ALJ Gohr determined that plaintiff had severe impairments including: "status post left shoulder arthroscopy, status post right shoulder arthroscopy, status post L5-S1 discectomy and fusion, herniated disc and cervical spine, and obesity (R. 23). She also determined that plaintiff had the residual functional capacity to perform sedentary work "except [the plaintiff] can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds; frequently reach in all directions bilaterally, and occasionally

- 4 -

stooping, kneeling, crouching and crawling. [The plaintiff] must alternate sitting and standing while remaining on task" (R. 24-25).

On appeal to the Appeals Council, plaintiff submitted additional medical records including a report from Dr. Huckell dated February 6, 2017 (R. 10). In that report, Dr. Huckell noted that plaintiff continued to have some residual pain in his lower back, but that his neck pain was his "main concern". Id. Plaintiff rated his neck pain as "8-9/10 on average and 10/10 at its worse". Id. The pain was reported to radiate bilaterally down to his fingers, resulting in "clumsiness", dropping things, and worsening of his handwriting. Id. Dr. Huckell stated that plaintiff has "diffuse disc herniations through C2-C7 and his injury/pathology is to widespread for surgery to help him significantly" (R. 11). He noted that an MRI in 2016 had showed a "progression" of the disc herniation at C5-C6 (R. 14). He again concluded that plaintiff has "a permanent partial disability as a result of the motor vehicle accident" (R. 16).[3]

The plaintiff argues that ALJ Gohr impermissibly relied upon her own interpretation of the medical evidence in determining that plaintiff could perform sedentary work, with specific exceptions as to climbing, and alternating sitting and standing. [15-1], p. 12-16. The Acting Commissioner argues that ALJ Gohr's RFC was not required "correspond to any

---

[3] Despite the fact that Dr. Huckell's post-decision report discussed diagnostic testing which demonstrated a progression of plaintiff's cervical condition during the time period prior to ALJ Gohr's decision (and raised issues relating to plaintiff's ability to grasp and manipulate items necessary to perform sedentary work), the Appeals Council refused to even consider the report (R. 2). Although not argued by the plaintiff, the Second Circuit has held that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing". Carrera v. Colvin, 2015 WL 1126014, *8 (N.D.N.Y. 2015). This is because "[e]xaminations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses". Carrera, 2015 WL 1126014, at *8. Here, the Appeals Council refused to consider this newly obtained and material evidence without articulating any reason (R. 2). See 20 C.F.R. § 404.976(b) ("If [the claimant] submit[s] evidence that does not relate to the period on or before the date of the [ALJ's] hearing decision, the Appeals Council *will explain why* it did not accept the additional evidence[.] ) (emphasis added). Because the report raised issues with respect to plaintiff's ability to perform work activity during the relevant time period, such a failure on the part of the Appeals Council requires a remand. Webster v. Colvin, 215 F. Supp. 3d 237, 242–43 (W.D.N.Y. 2016).

specific medical source statement of functioning" and that ALJ Gohr's RFC is supported by substantial evidence in the record. [20-1], p. 16.

The record evidence does not include any specific opinion of plaintiff's functionality by a medical source. In assessing plaintiff's RFC, ALJ Gohr does not point to any specific medical opinion relating to the plaintiff's ability to stand, walk, sit or perform other functional work activity. Instead, ALJ Gohr discusses: (1) plaintiff's own statement regarding his functionality; (2) the fact that plaintiff has a "special diploma" from high school because he was in classes for the emotionally disturbed; (3) that plaintiff lives with his wife and three children; (4) and a summary of the various medical reports in the record (R. 25-30). She gave "little weight" to the opinions of Dr. Huckell and Dr. Tetro because "there is no discussion of function in rendering such opinions and the opinions as to total disability are limited to a specific timeframe" (R. 30). Notwithstanding this admitted gap in the record, ALJ Gohr found that her assessment of plaintiff's RFC was supported by the medical evidence in the record and plaintiff's activities of daily living. Id.

Although an ALJ need not track any single medical opinion is assessing a claimant's RFC, she cannot draw her own conclusions as to functional limitations based upon the raw medical evidence. See Skupien v. Colvin, 2014 WL 3533425, *5-6 (W.D.N.Y. 2014) ("[a]s a general rule, where the transcript contains only diagnostic evidence and no [supporting] opinion from a medical source about functional limitations. . . , to fulfill the responsibility to develop a complete record the ALJ must recontact [an acceptable medical] source, order a consultative examination, or have a medical expert testify at the hearing"); Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) ("[t]he ALJ discussed echocardiography reports, electrocardiogram reports, X-ray technician notes, and handwritten notes of a physician's assistant. . . . Then, without opinions from the medical professionals concerning the impact of

these results on Plaintiff's RFC, the ALJ simply concluded that Plaintiff was capable of performing light work. This was error").

Here, ALJ Gohr erred in failing to recontact Dr. Tetro and Dr. Huckell, or a consultative physician, to obtain any medical opinion as to the plaintiff' functional capacity. This error requires a remand for further administrative proceedings.

C.      Did the ALJ Fail to Consider a Closed Period of Disability?

Plaintiff argues that in light of the various determinations by Dr. Tetro and Dr. Huckell, ALJ Gohr should have considered whether plaintiff was disabled for a closed period of more than 12 months. [15-1], p. 20. The Acting Commissioner argues that because she found that plaintiff was not disabled during the entirety of the relevant period, she did not have to considered whether plaintiff was disabled for a closed period. [20-1], p. 23.

I agree that a closed period of disability should have been considered. Dr. Tetro opined that in light of his various shoulder surgeries, plaintiff was temporarily totally disabled on April 25, 2014 (R. 412). He repeated that plaintiff as temporarily totally disabled on July 18, 2014 "until reevaluated by pain management" (R. 423). On October 7, 2014, Dr. Huckell stated that plaintiff was considered "temporarily disabled" (R. 459). After the March 11, 2015 surgery to plaintiff's lumbar spine, Dr. Huckell opined that plaintiff was "totally disabled" for a minimum six months (R. 445). On December 15, 2015, Dr. Huckell stated that plaintiff had been "totally disabled since his car accident" and would "remain[] totally disabled" for at least another three months (R. 488).

In light of this record, ALJ Gohr was required to consider whether plaintiff was totally disabled for a closed period of at least 12 months while he recuperated from the various

surgeries. The failure to do so also requires remand. *See* Robertson v. Berryhill, 2017 WL 3574626, *3 (W.D.N.Y. 2017) ("[T]he ALJ should have considered whether a closed period of disability had occurred following plaintiff's tibial fracture. His failure to do so warrants remand".)

## CONCLUSION

For these reasons, Plaintiff's motion for judgment on the pleadings [15] is granted to the extent that this case is remanded for further proceedings, consistent with the issues discussed above, and the Acting Commissioner's motion for judgment on the pleadings [20] is denied.

Dated: June 11, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge